E-FILED
Friday, 12 November, 2004  02:25:25 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| RAMADA FRANCHISE SYSTEMS, INC., a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. |
| SHRI OHM CORPORATION., d/b/a SHREE OHM, INC., an Illinois corporation, JAY VIDYALANKAR, SHARAD DESAI, PAUL FEMMER, and RAJEN JHALA, individuals, | ) 04-3248 ) ) ) ) ) |
| Defendants. | ) |

*FILED
NOV 1 2 2004
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS*

## COMPLAINT

Plaintiff Ramada Franchise Systems, Inc. ("RFS"), states as follows for its Complaint against defendants Shri Ohm Corporation, d/b/a Shree Ohm, Inc., Jay Vidyalankar, Sharad Desai, Paul Femmer, and Rajen Jhala (collectively "Defendants"):

### NATURE OF THE CASE

1. This matter arises from Defendants' failure to comply with their contractual obligations to RFS under a License Agreement, Assignment and Assumption Agreement and Guaranty Agreements for the operation of a Ramada® facility in Springfield, Illinois. In 2002, Defendants ceased operating the guest lodging facility as a Ramada facility, in violation of the License Agreement, Assignment and Assumption Agreement and Guaranty Agreements. RFS files this Complaint to recover damages resulting from the breach of the parties' agreements.

## PARTIES, JURISDICTION AND VENUE

2.  Plaintiff RFS is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Parsippany, New Jersey. RFS is registered to transact business in Illinois.

3.  Defendant Shri Ohm Corporation d/b/a Shree Ohm, Inc. ("Shri Ohm"), is an Illinois corporation which was involuntarily dissolved on April 1, 2002. Prior to its dissolution, Shri Ohm maintained its principal place of business and its Registered Agent at 625 E. St. Joseph Street, Springfield, Illinois 62701.

4.  Defendant Jay Vidyalankar ("Vidyalankar") is an individual and a citizen of the state of Florida, residing at 4139 E. Busch Boulevard, Unit #400, Tampa, Florida 33617.

5.  Defendant Sharad Desai ("Desai") is an individual and a citizen of the state of Illinois, residing at 8 Dunbridge Ct., Glen Carbon, Illinois 62304.

6.  Defendant Paul Femmer ("Femmer") is an individual and a citizen of the state of Missouri, residing at 1616 Wildhorse Pkwy, Chesterfield, Missouri 63005.

7.  Defendant Rajen Jhala ("Jhala") is an individual and a citizen of the State of Missouri, residing at 16347 Champion Dr., Chesterfield, Missouri 63005. Jhala is the Registered Agent for Shri Ohm.

8.  The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.00.

9.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367.

10. This Court has personal jurisdiction over Defendants by virtue of, among other things, section 2 of the Addendum to the January 12, 1996 License Agreement, described in

more detail below, pursuant to which Section 17.4 of the License Agreement was amended by providing "that all litigation by or between [Defendants] and [RFS], arising directly or indirectly from the franchise relationship, shall be commenced and maintained . . . in the state courts of Illinois or the United States District Court for Illinois . . . ." In addition this Court has personal jurisdiction over Jhala by virtue of the terms of a Guaranty, described in more detail below, pursuant to which Jhala acknowledged that he was personally bound by section 17 of the License Agreement..

11. Venue is proper in this forum pursuant to 28 U.S.C. § 1391(b) because the activities complained of occurred in this judicial district. Additionally, the corporate defendant, Shri Ohm, holds itself out as an Illinois corporation.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Agreements Between The Parties

12. On or about January 12, 1996, RFS entered into a License Agreement (the "License Agreement") with Shree Ohm, Inc. ("Shree") for the operation of a 120-room guest lodging facility located at 625 E. St. Joseph Street, Springfield, Illinois 62701, Site No. 7963 (the "Facility") for a 15-year term. On or about February 9, 2000, defendant Shri Ohm Corporation ("Shri Ohm") entered into an Assignment and Assumption Agreement (the "Assignment and Assumption Agreement") with Shree and RFS, whereby the License Agreement was assigned from Shree to Shri Ohm, as Licensee. True copies of the License Agreement and Assignment and Assumption Agreement are attached to this Complaint as Exhibit A.

13. Pursuant to section 2 of the Assignment and Assumption Agreement, Shree agreed that it "shall remain secondarily liable for payment and performance of the [License Agreement]."

14. Pursuant to section 5 of the License Agreement and section 8 of the Assignment and Assumption Agreement, Shri Ohm was obligated to operate the Facility as a Ramada guest lodging facility for the remainder of the 15-year term, during which time Shri Ohm was permitted to use the Ramada® trade names and service marks ("Ramada Marks") in association with the operation and use of the Facility as part of RFS' franchise system.

15. Pursuant to section 3.4 of the License Agreement, Shri Ohm was required to operate the Facility in compliance with RFS' "System Standards," as defined in the License Agreement, including RFS' quality assurance requirements.

16. Pursuant to section 4.8 of the License Agreement, RFS had the "unlimited right to conduct unannounced quality assurance inspections" of the Facility (and the unlimited right to reinspect if the Facility received a failing score in the inspection) to determine whether the Facility was in compliance with RFS' quality assurance requirements.

17. Pursuant to section 7 and Schedule C of the License Agreement, Shri Ohm was required to make certain periodic payments to RFS for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees").

18. Pursuant to section 3.9 of the License Agreement, Shri Ohm was required to prepare and submit monthly reports to RFS disclosing, among other things, the amount of gross room revenue earned by Shri Ohm at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to RFS.

19. Pursuant to section 3.9 of the License Agreement, Shri Ohm agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.8 and 4.8 of the License

Agreement, Shri Ohm agreed to allow RFS to examine, audit, and make copies of the entries in these books, records, and accounts.

20. Pursuant to section 11.2 of the License Agreement, RFS could terminate the License Agreement, with notice to Shri Ohm, for various reasons, including Shri Ohm's (a) discontinuing operation of the Facility as a Ramada, (b) loss of possession or the right to possession of the Facility, (c) failure to pay debts as they become due in the ordinary course of business, (d) failure to pay any amount due RFS under the License Agreement, (e) failure to remedy any other default of its obligations or warranties under the License Agreement within 30 days after receipt of written notice from RFS specifying one or more defaults under the License Agreement, and/or (f) receipt of two or more notices of default under the License Agreement in any one year period, whether or not the defaults were cured.

21. Pursuant to section 12.1 of the License Agreement, Shri Ohm agreed that, in the event of a termination of the License Agreement pursuant to section 11.2, it would pay liquidated damages to RFS in accordance with a formula specified in the License Agreement.

22. Pursuant to section 18.4, the parties reached an agreed compromise that "Liquidated Damages payable upon Termination will not exceed One Thousand Dollars ($1,000.00) for each guest room of the Facility [Shri Ohm is] authorized to operate at the time of Termination."

23. Pursuant to section 17.4 of the License Agreement, Shri Ohm agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement."

24. Effective as of the date of the License Agreement, Vidyalankar, Desai and Femmer provided RFS with a Guaranty of Shree's obligations under the License Agreement ("January 12, 1996 Guaranty"). A true copy of the Guaranty is attached to this Complaint as Exhibit B.

25. Pursuant to the terms of the January 12, 1996 Guaranty, Vidyalankar, Desai and Femmer agreed, among other things, that upon a default under the License Agreement, they would "immediately make each payment and perform or cause [Shree] to perform, each unpaid or unperformed obligation of [Shree] under the [License] Agreement."

26. Pursuant to the terms of the January 12, 1996 Guaranty, which expressly acknowledges that section 17 of the License Agreement applies to the January 12, 1996 Guaranty, Vidyalankar, Desai and Femmer agreed to pay the costs, including reasonable attorneys' fees, incurred by RFS in enforcing its rights or remedies under the Guaranty or the License Agreement.

27. Effective as of the date of the Assignment and Assumption Agreement, Jhala provided RFS with a Guaranty of Shri Ohm's obligations under the License Agreement and Assignment and Assumption Agreement ("February 9, 2000 Guaranty"). A true copy of the Guaranty is attached to this Complaint as Exhibit C.

28. Pursuant to the terms of the February 9, 2000 Guaranty, Jhala agreed, among other things, that upon a default under the License Agreement, he would "immediately make each payment and perform or cause [Shri Ohm] to perform, each unpaid or unperformed obligation of [Shri Ohm] under the [License] Agreement."

29. Pursuant to the terms of the February 9, 2000 Guaranty, which expressly acknowledges that section 17 of the License Agreement applies to the February 9, 2000

Guaranty, Jhala agreed to pay the costs, including reasonable attorneys' fees, incurred by RFS in enforcing its rights or remedies under the Guaranty or the License Agreement.

### The Defendant's Defaults and Termination

30.  Beginning in 2000, Shri Ohm repeatedly failed to operate the Facility in accordance with RFS' System Standards, in breach of its obligations under the License Agreement.

31.  The Facility failed four quality assurance ("QA") inspections conducted by RFS from September 2000 through July 2002. RFS provided written notice to Shri Ohm of its QA defaults under the License Agreement by letters dated October 5, 2000, August 20, 2001, December 3, 2001, and August 27, 2002, respectively, and further advised Shri Ohm that the License Agreement was subject to termination. True copies of these written notices are attached as Group Exhibit D.

32.  In addition to their QA defaults, Defendants failed to comply with their monetary obligations under the License Agreement. By letter dated April 5, 2001, a true copy which attached to this Complaint as Exhibit E, RFS advised Shri Ohm that (a) it was in breach of the License Agreement because it had not filed its monthly revenue reporting forms for October-December 2000, and January-February 2001 and owed RFS approximately $52,113.15 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the License Agreement might be subject to termination.

33.  Rather than cure its long-standing defaults, Shri Ohm unilaterally terminated the License Agreement by ceasing to operate the Facility as a Ramada guest lodging facility and by losing possession of the Facility to its lender.

7

34. On or about August 14, 2002, RFS learned that Shri Ohm had failed to pay its electric bill and ceased operation when its electricity was shut off by the electric company, City Water, Light and Power. Shortly thereafter, RFS learned that Shri Ohm had unilaterally terminated the License Agreement by ceasing to operate the Facility as a Ramada and losing possession of the Facility to its lender.

35. By letter dated October 16, 2002, a true copy of which is attached as Exhibit F, RFS acknowledged the termination of the License Agreement, effective October 1, 2002, and advised Shri Ohm that (a) it was to discontinue the use of all signage and other items bearing the Ramada Marks, perform all post-termination obligations, change all signs, billboards, and listings in telephone directories, travel guides, hotel indexes and similar materials in which the Facility is identified as a Ramada, and remove the marks from any advertising or promotional activities, and (b) it was required to pay to RFS as liquidated damages for premature termination the sum of $120,000.00 as required under section 18.4 the License Agreement; all outstanding Recurring Fees, at that time estimated to be $100,878.98; and all additional monies to which RFS is entitled under the parties' agreements.

## FIRST COUNT – BREACH OF CONTRACT

36. RFS repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 35 of the Complaint.

37. Pursuant to section 8 of the Assignment and Assumption Agreement and section 5 of the License Agreement, Shri Ohm was required to operate and maintain the Facility as a Ramada continuously through the expiration of the License Agreement in 2011.

38. On or about August 14, 2002, Shri Ohm breached the License Agreement and Assignment and Assumption Agreement by failing to pay its electricity bill, and by unilaterally

terminating the License Agreement by ceasing to operate as a Ramada facility and losing possession of the Facility to its lender.

39. Sections 12.1 and 18.4 of the License Agreement provide that, in the event of termination of the License Agreement due to action of the licensee, Shri Ohm shall pay liquidated damages to RFS within 30 days of termination.

40. As a result of its premature termination of the License Agreement, Shri Ohm is obligated to pay RFS liquidated damages in the amount of $120,000.00, as calculated pursuant to sections 12.1 and 18.4 of the License Agreement.

41. By virtue of the terms of section 2 of the Assignment and Assumption Agreement, Shree is additionally liable for payment of the liquidated damages due and owing to RFS pursuant to the terms of the License Agreement.

42. Notwithstanding RFS' demand for payment, Shri Ohm and Shree have failed to pay RFS the liquidated damages as required.

43. RFS has been damaged by the failure of Shri Ohm and Shree to pay liquidated damages.

## SECOND COUNT – BREACH OF CONTRACT

44. RFS repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 43 of the Complaint.

45. By virtue of the premature termination of the License Agreement, RFS sustained a loss of future revenue over the remainder of the 15-year term of the License Agreement.

46. If the Court determines that Shri Ohm and Shree are not liable to pay RFS liquidated damages as required by sections 12.1 and 18.4 of the License Agreement then, in the

alternative, Defendants are liable to RFS for actual damages for the premature termination of the License Agreement.

47. RFS has been damaged by Defendants' breach of their obligation to operate a Ramada guest lodging facility for the remaining term of the License Agreement.

### THIRD COUNT – BREACH OF CONTRACT

48. RFS repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 47 of the Complaint.

49. Pursuant to section 2 of the Assignment and Assumption Agreement, and section 7 and Schedule C of the License Agreement, Shri Ohm was obligated to remit Recurring Fees to RFS.

50. By virtue of the terms of section 2 of the Assignment and Assumption Agreement, Shree is liable for payment of the Recurring Fees due and owing to RFS pursuant to the terms of the License Agreement.

51. Despite their obligation to do so, Shri Ohm and Shree have failed to remit certain of the Recurring Fees due and owing under the License Agreement. As of October 14, 2004, the estimated amount of Recurring Fees owed to RFS is $126,896.70.

52. Shri Ohm and Shree's failure to remit the agreed Recurring Fees constitutes a breach of their agreements with RFS and has damaged RFS.

### FOURTH COUNT – BREACH OF CONTRACT

53. RFS repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 52 of the Complaint.

54. Pursuant to the terms of the February 9, 2000 Guaranty, Jhala agreed, among other things, that upon a default under the Assignment and Assumption Agreement or License

10

Agreement, he would immediately make each payment and perform each obligation required of Shri Ohm under the License Agreement.

55.    Despite his obligation to do so, Jhala has failed to make any payments or perform, or cause performance of each obligation required of Shri Ohm under those Agreements.

56.    Pursuant to the February 9, 2000 Guaranty, Jhala is liable to RFS for liquidated damages in the amount of $120,000.00, or actual damages in an amount to be determined at trial, and all Recurring Fees due and owing under the Assignment and Assumption Agreement and the License Agreement.

### FIFTH COUNT – BREACH OF CONTRACT

57.    RFS repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 56 of the Complaint.

58.    Pursuant to the terms of the January 12, 1996 Guaranty, Vidyalankar, Desai and Femmer agreed, among other things, that upon a default under the License Agreement, they would immediately make each payment and perform each obligation required of Shree under the License Agreement.

59.    Despite their obligation to do so, Vidyalankar, Desai and Femmer have failed to make any payments or perform, or cause performance of each obligation required of Shree under the License Agreement.

60.    Pursuant to the January 12, 1996 Guaranty, Vidyalankar, Desai and Femmer are liable to RFS for liquidated damages in the amount of $120,000.00, or actual damages in an amount to be determined at trial, and all Recurring Fees due and owing under the License Agreement.

## SIXTH COUNT – ACCOUNTING

61. RFS repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 60 of the Complaint.

62. Pursuant to section 4 of the License Agreement, Shri Ohm agreed to allow RFS to examine, audit, and make copies of its financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

63. The calculation of the monetary amounts sought by RFS as Recurring Fees in this action is based on the gross room revenue information supplied to RFS by Shri Ohm and, to the extent that there has been non-reporting, RFS' estimate as to the gross room revenue earned by Shri Ohm.

64. The accuracy of this estimate cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Shri Ohm.

## SEVENTH COUNT – UNJUST ENRICHMENT

65. RFS repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 64 of the Verified Complaint.

66. Defendants have benefited from their wrongful and unauthorized use of the Ramada Marks after termination of the License Agreement, and have paid no royalty or other Recurring Fees to RFS in return for that benefit.

67. Defendants' failure to compensate RFS constitutes unjust enrichment and has damaged RFS.

## PRAYER FOR RELIEF

**WHEREFORE**, as a result of the unlawful acts of Defendants set forth in each of the counts above, plaintiff RFS prays for the entry of judgment against the Defendants:

  (a) Granting an award of damages against Defendants for:

    (i) Liquidated Damages in the amount of $120,000.00 (or, in the alternative, actual damages caused by Defendants' premature termination of the License Agreement, in an amount to be determined at trial), together with interest, attorneys' fees, and costs of suit; and

    (ii) The Recurring Fees due and owing under the License Agreement, together with interest, attorneys' fees and costs of suit; and

  (b) Ordering that Defendants account to RFS for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility through and with the Ramada Marks;

  (c) Granting such other compensatory damages, attorneys' fees, prejudgment interest, cost of suit and such other and further relief as this Court shall deem just and proper.

            Respectfully submitted,

            RAMADA FRANCHISE SYSTEMS, INC.

            _____
            One of its Attorneys

Dated: November 12, 2004

Paula J. Morency
Robin M. Spencer
Fiona A. Burke
Schiff Hardin LLP
6600 Sears Tower
Chicago, Illinois 60606
(312) 258-5500