IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| RAMADA FRANCHISE SYSTEMS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHRI OHM CORPORATION., d/b/a SHREE OHM, INC., an Illinois corporation, JAY VIDYALANKAR, SHARAD DESAI, PAUL FEMMER, and RAJEN JHALA, individuals,<br><br>Defendants. | Case No. 3:04-cv-3248<br><br>Hon. Jeanne E. Scott<br><br>Mag. Byron G. Cudmore |

### AFFIDAVIT OF KATHY COX

**KATHY COX**, being duly sworn, according to law, upon her oath, deposes and says:

1.  I am the Senior Director of Franchise Administration for plaintiff Ramada Worldwide, Inc., formerly known as Ramada Franchise Systems, Inc. ("RWI").

2.  This affidavit is made in support of RWI's Motion for Entry of Default Judgment against defendants Rajen Jhala ("Jhala"), Shri Ohm Corporation d/b/a Shree Ohm, Inc. ("Shri Ohm"), and Jay Vidyalankar ("Vidyalankar") (collectively, the "Defaulted Defendants") pursuant to Federal Rule of Civil Procedure 55(b). I make this affidavit on behalf of RWI based on my personal knowledge, the records of RWI, or information available through employees of RWI and am prepared to testify to the following facts if called as a witness.

### The Agreements Between The Parties

3.  On or about January 12, 1996, RWI entered into a License Agreement (the "License Agreement") with Shree Ohm, Inc. ("Shree") for the operation of a 120-room guest lodging facility located at 625 E. St. Joseph Street, Springfield, Illinois 62701, Site No. 7963 (the



"Facility") for a 15-year term. On or about February 9, 2000, defendant Shri Ohm entered into an Assignment and Assumption Agreement (the "Assignment and Assumption Agreement") with Shree and RWI, whereby the License Agreement was assigned from Shree to Shri Ohm, as Licensee. True copies of the License Agreement and Assignment and Assumption Agreement are attached to RWI's Complaint as Exhibit A.

4. Pursuant to section 2 of the Assignment and Assumption Agreement, Shree agreed that it "shall remain secondarily liable for payment and performance of the [License Agreement]."

5. Pursuant to section 5 of the License Agreement and section 8 of the Assignment and Assumption Agreement, Shri Ohm was obligated to operate the Facility as a Ramada® guest lodging facility for the remainder of the 15-year term, during which time Shri Ohm was permitted to use the Ramada® trade names and service marks ("Ramada Marks") in association with the operation and use of the Facility as part of RWI's franchise system.

6. Pursuant to section 3.4 of the License Agreement, Shri Ohm was required to operate the Facility in compliance with RWI's "System Standards," as defined in the License Agreement, including RWI's quality assurance requirements.

7. Pursuant to section 4.8 of the License Agreement, RWI had the "unlimited right to conduct unannounced quality assurance inspections" of the Facility (and the unlimited right to reinspect if the Facility received a failing score in the inspection) to determine whether the Facility was in compliance with RWI's quality assurance requirements.

8. Pursuant to section 7 and Schedule C of the License Agreement, Shri Ohm was required to make certain periodic payments to RWI for royalties, service assessments, taxes,

2

interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees").

9. Pursuant to section 3.9 of the License Agreement, Shri Ohm was required to prepare and submit monthly reports to RWI disclosing, among other things, the amount of gross room revenue earned by Shri Ohm at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to RWI.

10. Pursuant to section 3.9 of the License Agreement, Shri Ohm agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.8 and 4.8 of the License Agreement, Shri Ohm agreed to allow RWI to examine, audit, and make copies of the entries in these books, records, and accounts.

11. Pursuant to section 7.3 Shri Ohm was required to pay interest on any past due amounts "at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

12. Pursuant to section 11.2 of the License Agreement, RWI could terminate the License Agreement, with notice to Shri Ohm, for various reasons, including Shri Ohm's (a) discontinuing operation of the Facility as a Ramada, (b) loss of possession or the right to possession of the Facility, (c) failure to pay debts as they become due in the ordinary course of business, (d) failure to pay any amount due RWI under the License Agreement, (e) failure to remedy any other default of its obligations or warranties under the License Agreement within 30 days after receipt of written notice from RWI specifying one or more defaults under the License Agreement, and/or (f) receipt of two or more notices of default under the License Agreement in any one year period, whether or not the defaults were cured.

3

13. In light of the difficulty of calculating the precise amount of injury to RWI if Shri Ohm breached and/or impermissibly terminated the License Agreement and Assignment and Assumption Agreement, sections 12.1 and 18 contained a provision for liquidated damages. Under the terms of section 12.1, Shri Ohm agreed that, in the event of a termination of the License Agreement pursuant to section 11.2, it would pay liquidated damages to RWI within 30 days, in accordance with the formula specified in the License Agreement. Shri Ohm agreed that RWI's "right to receive other amounts due under [the License] Agreement is not affected" by Defendants' obligation to pay liquidated damages.

14. Pursuant to section 18.4, the parties reached an agreed compromise that "Liquidated Damages payable upon Termination will not exceed One Thousand Dollars ($1,000.00) for each guest room of the Facility [Shri Ohm is] authorized to operate at the time of Termination." There were 120 authorized guest rooms in this Facility at the time of termination.

15. Pursuant to section 17.4 of the License Agreement, Shri Ohm agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement."

16. Effective as of the date of the License Agreement, Vidyalankar, Sharad Desai and Paul Femmer provided RWI with a Guaranty of Shree's obligations under the License Agreement ("January 12, 1996 Guaranty"). A true copy of the Guaranty is attached to RWI's Complaint as Exhibit B.

17. Pursuant to the terms of the January 12, 1996 Guaranty, Vidyalankar agreed, among other things, that upon a default under the License Agreement, he would "immediately

4

make each payment and perform or cause [Shree] to perform, each unpaid or unperformed obligation of [Shree] under the [License] Agreement."

18. Pursuant to the terms of the January 12, 1996 Guaranty, which expressly acknowledges that section 17 of the License Agreement applies to the January 12, 1996 Guaranty, Vidyalankar agreed to pay the costs, including reasonable attorneys' fees, incurred by RWI in enforcing its rights or remedies under the Guaranty or the License Agreement.

19. Effective as of the date of the Assignment and Assumption Agreement, Jhala provided RWI with a Guaranty of Shri Ohm's obligations under the License Agreement and Assignment and Assumption Agreement ("February 9, 2000 Guaranty"). A true copy of the February 9, 2000 Guaranty is attached to the Complaint as Exhibit C.

20. Pursuant to the terms of the February 9, 2000 Guaranty, Jhala agreed, among other things, that upon a default under the License Agreement, he would "immediately make each payment and perform or cause [Shri Ohm] to perform, each unpaid or unperformed obligation of [Shri Ohm] under the [License] Agreement."

21. Pursuant to the terms of the February 9, 2000 Guaranty, which expressly acknowledges that section 17 of the License Agreement applies to the February 9, 2000 Guaranty, Jhala agreed to pay the costs, including reasonable attorneys' fees, incurred by RWI in enforcing its rights or remedies under the Guaranty or the License Agreement.

### The Defendants' Defaults and Termination

22. Beginning in 2000, Shri Ohm repeatedly failed to operate the Facility in accordance with RWI's System Standards, in breach of its obligations under the License Agreement.

23. The Facility failed four quality assurance ("QA") inspections conducted by RWI from September 2000 through July 2002. RWI provided written notice to Shri Ohm of its QA defaults under the License Agreement by letters dated October 5, 2000, August 20, 2001, December 3, 2001, and August 27, 2002, respectively, and further advised Shri Ohm that the License Agreement was subject to termination. True copies of these written notices are attached to the Complaint as Group Exhibit D.

24. In addition to the QA defaults, Defendants failed to comply with their monetary obligations under the License Agreement and Guaranty agreements. By letter dated April 5, 2001, RWI advised Shri Ohm that (a) it was in breach of the License Agreement because it had not filed its monthly revenue reporting forms for October-December 2000, and January-February 2001 and owed RWI approximately $52,113.15 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the License Agreement might be subject to termination. A true copy of the letter dated April 5, 2001, is attached to the Complaint as Exhibit E.

25. Rather than cure its long-standing defaults, Shri Ohm unilaterally terminated the License Agreement by ceasing to operate the Facility as a Ramada® guest lodging facility and by losing possession of the Facility to its lender.

26. On or about August 14, 2002, RWI learned that Shri Ohm had failed to pay its electric bill and ceased operation when its electricity was shut off by the electric company, City Water, Light and Power. Shortly thereafter, RWI learned that Shri Ohm had unilaterally terminated the License Agreement by ceasing to operate the Facility as a Ramada® facility and losing possession of the Facility to its lender.

6

27. By letter dated October 16, 2002, RWI acknowledged the termination of the License Agreement, effective October 1, 2002, and advised Shri Ohm that (a) it was to discontinue the use of all signage and other items bearing the Ramada Marks, perform all post-termination obligations, change all signs, billboards, and listings in telephone directories, travel guides, hotel indexes and similar materials in which the Facility is identified as a Ramada, and remove the marks from any advertising or promotional activities, and (b) it was required to pay to RWI as liquidated damages for premature termination the sum of $120,000.00 as required under section 18.4 the License Agreement; all outstanding Recurring Fees, at that time estimated to be $100,878.98; and all additional monies to which RWI is entitled under the parties' agreements. A true copy of the October 16, 2002, is attached to the Complaint as Exhibit F.

28. By letter dated October 27, 2004, RWI further notified two of the Defaulted Defendants, Jhala and Vidyalankar, in their capacities as guarantors of the License Agreement and Assignment and Assumption Agreement, that they were personally responsible for the payment of "the outstanding royalties and fees, and liquidated damages owed under the License Agreement." A true and correct copy of the October 27, 2004 letter is attached hereto Exhibit A.

## Damages

### Recurring Fees

29. As of January 19, 2005, the amount of Recurring Fees due from Jhala and Vidyalankar to RWI pursuant to the License Agreement, Assignment and Assumption Agreement and Guaranty Agreements is $130,140.95, and the current amount the amount of Recurring Fees due from Shri to RWI pursuant to the License Agreement and Assignment and Assumption Agreement is $62,297.01.

30.  The amounts of past due Recurring Fees due from Jhala and Vidyalankar, as set forth in the preceding paragraph, was calculated using an itemized statement for the Facility dated January 18, 2005, covering Recurring Fees owed by Jhala and Vidyalankar from October 1999 to the present. The amounts of past due Recurring Fees due from Shri, as set forth in the preceding paragraph, was calculated using an itemized statement for the Facility dated January 18, 2005, covering Recurring Fees owed by Shri from May 23, 2002 to the present. The Itemized Statements were compiled and printed by RWI's Finance Department. RWI's Finance Department has regular responsibility for maintaining such records in the ordinary course of our business. True and correct copies of the January 18, 2005 Itemized Statements are attached hereto as Exhibits B and C respectively.

31.  The Itemized Statements includes accrued interest. Pursuant to section 7.3 of the License Agreement, RWI is entitled to interest on past due amounts calculated at the legal rate of interest of 1.5% per month. Interest is calculated at the rate of 1.5% monthly, per days in the month, on items that are over thirty days past due. Interest is not calculated on finance charges or accruals.

32.  To date, Defendants have failed to pay any of the Recurring Fees that are due to RWI.

### Liquidated Damages

33.  RWI is also seeking $120,000.00 in Liquidated Damages that became due as a result of the premature termination of the License Agreement. Pursuant to sections 12.1 and 18.4 of the License Agreement, RWI is also entitled to interest on this amount calculated at the legal rate of interest of 1.5% per month in the amount of $46,800.00 from November 1, 2002 (30 days

8

after the date of termination) through January 19, 2005 (the date of filing of this Motion for Default Judgment).

34. Defendants have not paid any of the Liquidated Damages for premature termination of the License Agreement set forth in the preceding paragraph.

35. RWI has attempted to replace this site since the premature termination of the License Agreement on October 1, 2002. However, RWI has been unable to replace this site to date.

### Other Damages

36. In addition to the amounts described above, RWI is entitled to interest accruing after the date of entry of RWI's Motion for Default Judgment until the judgment is paid in full.

37. RWI also has incurred attorneys' fees, costs and expenses, for which it is owed reimbursement from the Defendants pursuant to Section 17.4 of the License Agreement, Assignment and Assumption Agreement and the Guaranty Agreements, and respectfully seeks a fees and costs award as well, as set forth in its accompanying motion.

Further affiant sayeth not.

DATED: January 19, 2005

Kathy Cox

SUBSCRIBED and SWORN to before me this 19th day of January, 2005 in Parsippany, New Jersey.

My commission expires: 05/25/2005

KIMBERLY A. JEFF
A Notary Public Of New Jersey
My Commission Expires May 25, 2005

9