IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| RAMADA FRANCHISE SYSTEMS, INC., a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 3:04-cv-3248 |
| | ) |
| SHRI OHM CORPORATION., d/b/a SHREE OHM, INC., an Illinois corporation, JAY VIDYALANKAR, SHARAD DESAI, PAUL FEMMER, and RAJEN JHALA, individuals, | ) Hon. Jeanne E. Scott ) ) Mag. Byron G. Cudmore ) ) ) |
| Defendants. | ) |

### AFFIDAVIT OF KATHY COX

**KATHY COX**, being duly sworn, according to law, upon her oath, deposes and says:

1.   I am the Senior Director of Franchise Administration for plaintiff Ramada Worldwide Inc., formerly known as Ramada Franchise Systems, Inc. ("RWI").

2.   This affidavit is made pursuant to the Court's May 31, 2005 Order granting RWI leave to submit additional information concerning the damages sought against defendants Rajen Jhala ("Jhala"), Shri Ohm Corporation d/b/a Shree Ohm, Inc. ("Shri Ohm"), and Jay Vidyalankar ("Vidyalankar") (collectively, the "Defaulted Defendants") in Plaintiff's Motion for Default Judgment. None of the Defaulted Defendants is an infant, incompetent person or in military service, and I make this affidavit on behalf of RWI based on my personal knowledge, the records of RWI or information available through employees of RWI and am prepared to testify to the following facts if called as a witness.

3.   As set forth in the Complaint and my May 3, 2005 Affidavit, RWI entered into a License Agreement (the "License Agreement") with Shree Ohm, Inc. ("Shree") on or about

January 12, 1996 for the operation of a 120-room guest lodging facility located at 625 E. St. Joseph Street, Springfield, Illinois 62701, Site No. 7963 (the "Facility") for a 15-year term. On or about February 9, 2000, defendant Shri Ohm entered into an Assignment and Assumption Agreement (the "Assignment and Assumption Agreement") with Shree and RWI, whereby the License Agreement was assigned from Shree to Shri Ohm, as Licensee. True copies of the License Agreement and Assignment and Assumption Agreement are attached to RWI's Complaint as Exhibit A. Pursuant to section 2 of the Assignment and Assumption Agreement, Shree agreed that it "shall remain secondarily liable for payment and performance of the [License Agreement]."

4. Effective as of the date of the License Agreement, Vidyalankar, along with two other guarantors, provided RWI with a Guaranty of Shree's obligations under the License Agreement ("January 12, 1996 Guaranty"). A true copy of the January 12, 1996 Guaranty is attached to RWI's Complaint as Exhibit B. Pursuant to the terms of the January 12, 1996 Guaranty, Vidyalankar agreed, among other things, that upon a default under the License Agreement, he would "immediately make each payment and perform or cause [Shree] to perform, each unpaid or unperformed obligation of [Shree] under the [License] Agreement."

5. Effective as of the date of the Assignment and Assumption Agreement, Jhala provided RWI with a Guaranty of Shri Ohm's obligations under the License Agreement and Assignment and Assumption Agreement ("February 9, 2000 Guaranty"). A true copy of the February 9, 2000 Guaranty is attached to my May 3, 2005 Affidavit as Exhibit D. Pursuant to the terms of the February 9, 2000 Guaranty, Jhala agreed, among other things, that upon a default under the License Agreement, he would "immediately make each payment and perform or cause

[Shri Ohm] to perform, each unpaid or unperformed obligation of [Shri Ohm] under the [License] Agreement."

6. The License Agreement ultimately was terminated effective October 1, 2002, due to Shri Ohm's breaches of the Agreement, as further set forth in my May 3, 2005 Affidavit and the Complaint.

**$15,000 Note Line Item Reflected on the Jhala/Vidyalankar Itemized Statement**

7. I understand that the Court has requested additional information concerning a $15,000 line item that appears on RWI's Itemized Statement dated January 18, 2005.

8. On August 14, 2001, Shree Ohm, Inc. and Jhala provided to RWI a promissory note in the amount of $15,000.00, which amount reflected a portion of unpaid Recurring Fees already due to RWI under the terms of the License Agreement and Guaranty agreements. A true and correct copy of the August 14, 2001 promissory note ("Note") is attached hereto as Exhibit C. By way of the Note, Shree and Jhala entered into a payment plan for $15,000 in previously-owing Recurring Fees, promising to pay that amount by October 15, 2001.[1] The amount of the Note simply consolidates a portion of Recurring Fees already owed under the License Agreement, and does not reflect a new charge for any other amounts or for any different or new purpose. The entry for the Note on the Itemized Statement evidenced the existing obligation to pay Recurring Fees, an obligation that was not extinguished by the Note (see n.1, *supra*).

9. In support of its Motion for Default Judgment, RWI set forth the amount of past-due Recurring Fees due from defendants Jhala and Vidyalankar, calculated using the Itemized

---

[1] Pursuant to the Note, the $15,000 debt would be discharged if the Facility received a Quality Assurance ("QA") score of 425 or higher on or before October 1, 2001. (See Note, par. 1.) The Facility failed to achieve such a score, as confirmed by the QA reports for the Facility, true and correct copies of which are attached to the Complaint as Group Exhibit D. (Compl., ¶ 32 & Ex. D thereto.) RWI prepared and maintains these QA reports in the regular course of its business.

Statement for the Facility dated January 18, 2005. (5/3/05 Affidavit of Kathy Cox, ¶30 & Ex. B.) The line item for the Note is included on the Itemized Statement because this $15,000 charge represents a consolidated sum of past Recurring Fees that were already owing under Section 7 and Schedule C of the License Agreement, under a new, extended due date of October 1, 2001 which RWI permitted to the Facility for this amount of past-due Recurring Fees. Importantly, this $15,000 charge does not duplicate or double-count any prior charges reflected on the Itemized Statement.

10. Both Jhala and Vidyalankar are each responsible for the $15,000 charge reflected on the Itemized Statement because the charge merely reflects a consolidation of Recurring Fees that were already owed by both of them pursuant to Section 7 and Schedule C of the License Agreement and the respective Guaranty agreements that they provided to RWI. While the Note represents an additional promise by Jhala to pay this $15,000 in past-due Recurring Fees by October 15, 2001, the Note also reflected and did not extinguish the existing obligations of Jhala and Vidyalankar to pay, jointly and severally, this amount of past-due Recurring Fees which they already owed under their respective Guaranty agreements.[2]

11. Accordingly, RWI seeks this $15,000 in past-due Recurring Fees from Vidyalankar and Jhala, jointly and severally, pursuant to the terms of the License Agreement, Vidyalankar's January 12, 1996 Guaranty, and Jhala's February 9, 2000 Guaranty, in addition to the amount of Recurring Fees previously awarded by the Court in its May 31, 2005 Order.

---

[2] RWI, by its Motion for Default Judgment, seeks to collect the Recurring Fees owed by the former franchisee and its guarantors. RWI does not seek to enforce the terms of the Note through this proceeding, but instead provides the Note to the Court to explain that its entry on the Itemized Statement constitutes further evidence of the existing obligation of Vidyalankar and Jhala to pay Recurring Fees (including this $15,000 amount) for the time periods covered by their respective Guaranty agreements.

### Accrued Royalty and RINA Service Assessment Fees
### for the Facility During the 24 Months Preceding Termination

12. In addition, RWI provides the Court with the following information concerning 24 months of Royalties and RINA Fees for the Facility pursuant to the Court's grant to RWI of leave to file supplemental information regarding its claim for liquidated damages against the Defaulted Defendants under Sections 12.1 and 18.4 of the License Agreement and the Guaranty agreements.

13. Pursuant to section 7 and Schedule C of the License Agreement, prior to termination, Shri Ohm was required to make certain periodic payments to RWI for royalties, RINA service assessment fees, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees"). Section 12.1 of the License Agreement provides formulae for calculating liquidated damages, including calculations using 24 months of Royalty and RINA Service Assessment Fees ("RINA Fees").

14. The amount of Royalties and RINA Fees that accrued during the 24 full calendar months immediately preceding termination of the License Agreement totals $83,691.00.

15. The amount of Royalties and RINA Fees set forth in the preceding paragraph was calculated using (a) a "Property Summary of Royalties" report for the Facility dated June 9, 2005 ("Summary Report"), and (b) an itemized statement for the Facility dated January 18, 2005 (the "Itemized Statement"), (together, the "Statements"). The Statements were prepared by RWI with historical data maintained on its computerized system. True copies of the Statements are attached hereto as Exhibits A and B, respectively.[3]

---

[3] The January 18, 2005 Itemized Statement also was attached to my May 3, 2005 Affidavit as Exhibit B.

16. The Summary Report reflects accrued Royalty and RINA Fees for the first 20 months of the applicable 24-month period (*i.e.*, October 2000 through May 2002), broken down into two segments: (1) Royalties (listed under the "Room" column on the Report), and (2) RINA Fees (listed under the "Adv" column on the Report). The total Royalty and RINA Fee amounts for the Facility for this time period total $65,291.00. Interest and finance charges have not been included.

17. The Summary Report does not reflect the Royalty and RINA Fee amounts for the remaining four months of the applicable 24 month period (*i.e.*, June 2002 through September 2002), during which time the charges were accruals. These amounts are instead reflected on the Itemized Statement for the Facility. (See Ex. B, pp. 5-8, boxed portions.) The Royalties and RINA Fee amounts for this time period total $18,400.00. Interest and finance charges have not been included.

18. Added together, the figures from these two Statements reflect the amount of accrued Royalties and RINA Fees for the Facility during the 24 full calendar months immediately preceding termination, or $83,691.00.

19. These Statements were compiled by RWI's Finance Department, acting at RWI's direction and under its control. RWI's Finance Department has regular responsibility for maintaining such records in the ordinary course of our business.

Further affiant sayeth not.

DATED: June 15th, 2005

_____
Kathy Cox

SUBSCRIBED and SWORN to before me this
15th day of June, 2005 in Parsippany,
New Jersey.

_____
My commission expires: 6/2006

LINDSAY A MULLER
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES 6/2006

-6-