**E-FILED**
Friday, 11 November, 2005  11:21:23 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **RAMADA WORLDWIDE INC., formerly** | ) | |
| **known as RAMADA FRANCHISE SYSTEMS,** | ) | |
| **INC., a Delaware corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 04-cv-3248** |
| **SHRI OHM CORPORATION, d/b/a** | ) | |
| **SHREE OHM, INC., an Illinois** | ) | **Hon. Jeanne E. Scott** |
| **corporation, JAY VIDYALANKAR,** | ) | |
| **SHARAD DESAI, PAUL FEMMER, and** | ) | **Mag. Byron G. Cudmore** |
| **RAJEN JHALA, individuals,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST**
<u>**DEFENDANTS SHARAD DESAI AND PAUL FEMMER**</u>

Dated: November 11, 2005

Paula J. Morency
Robin M. Spencer
Fiona A. Burke
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois 60606
(312) 258-5500

## <u>TABLE OF CONTENTS</u>

A.    INTRODUCTION .................................................................................1

B.    RELEVANT UNDISPUTED FACTS ..................................................3

    Parties, Jurisdiction and Venue ..........................................................3

    The Agreements Between The Parties .................................................5

    The Defaults and Termination ...........................................................10

    Damages ............................................................................................12

    Recurring Fees ..................................................................................12

    Liquidated Damages .........................................................................13

    Interest, Attorneys' Fees and Costs ..................................................16

C.    APPLICABLE LAW ...........................................................................16

    1.    Desai and Femmer are Liable to RWI for their Breaches of the
         Agreements Between the Parties ............................................17

         a.    Desai and Femmer are Liable to RWI for Unpaid
             Recurring Fees ............................................................17

         b.    RWI is also Entitled to an Award of Liquidated Damages ............19

D.    LEGAL DISCUSSION ........................................................................21

    1.    Defendants are Liable to Plaintiff for Damages Resulting from the
         Breach of the License Agreement and Guaranty ...................21

CONCLUSION .............................................................................................23

# TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ........................................................ 16, 21

Anstalt v. FIA Ins. Co., 749 F.2d 175 (3d Cir. 1984) ........................................................... 18, 22

Butscher v. Gubbins, No. 93 C 4794, 1994 WL 684954 (N.D. Ill. Dec. 6, 1994) ................. 17, 21

Central Steel Drum Co. v. Gold Cooperage, Inc., 200 N.J. Super. 251,
    cert. denied, 101 N.J. 303 (1985) ............................................................................... 20, 23

Coyle v. Englander's, 199 N.J. Super. 212 (App. Div. 1985) ................................................. 17, 21

D.H.M. Indus., Inc. v. Central Port Warehouses, Inc., 127 N.J. Super. 499
    (App. Div. 1973), aff'd, 64 N.J. 548 (1974) ............................................................... 19, 22

Days Inn v. Patel, 88 F. Supp. 2d 928 (C.D. Ill. 2000) .......................................................... 20

Essex Int'l, Inc. v. Clamage, 440 F.2d 547 (7th Cir. 1971) .................................................... 18, 22

Grundstad v. Ritt, 166 F.3d 867 (7th Cir. 1998) .................................................................... 18, 22

Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307 (7th Cir. 1989) ............................... 16, 21

Kutzin v. Pirnie, 124 N.J. 500 (1991) ................................................................................... 20

Margolius v. Fleming, 6 N.J. Misc. 1033, 143 A. 719 (1928) ................................................. 18, 22

Naporano Assocs., L.P. v. B&P Builders, 309 N.J. Super. 166 (App. Div. 1998) .................... 20

Pav-Saver Corp. v. Vasso Corp., 143 Ill. App. 3d 1013, 493 N.E.2d 423
    (3d Dist. 1986) ........................................................................................................... 19, 22

Ramada Franchise Systems v. Motor Inv. Corp., 755 F. Supp. 1570 (S.D. Ga. 1991) ............... 20

Siegel v. Levy Org. Dev. Co., 182 Ill. App. 3d 859, 538 N.E.2d 715
    (1st Dist. 1989) .......................................................................................................... 19

Tomei v. Tomei, 235 Ill. App. 3d 166, 602 N.E.2d 23 (1st Dist. 1992) .................................... 19

U.S. v. Kasuboski, 834 F.2d 1345 (7th Cir. 1987) .................................................................. 17

Wasserman's, Inc. v. Middletown, 137 N.J. 238 (1994) .......................................................... 19. 22, 23

Yockey v. Horn, 880 F.2d 945 (7th Cir. 1989)........................................................... 19, 23

## **Statutes**

28 U.S.C. § 1332 ................................................................................................................ 4

28 U.S.C. § 1367 ................................................................................................................ 4

Fed. R. Civ. P. 36 .......................................................................................................... 5, 17

Fed. R. Civ. P. 56(c) .................................................................................................... 16, 21

## A.  INTRODUCTION

Plaintiff Ramada Worldwide Inc., formerly known as Ramada Franchise Systems, Inc. ("RWI"), brought this diversity action to recover monies owed by Defendants pursuant to (1) a January 12, 1996 license agreement between RWI and Shree Ohm, Inc. ("Shree") for the operation of a Ramada® guest lodging facility located in Springfield, Illinois (the "License Agreement"), (2) a January 12, 1996 Guaranty of the License Agreement by Jay Vidyalankar ("Vidyalankar"), Sharad Desai ("Desai") and Paul Femmer ("Femmer") ("January 12, 1996 Guaranty"), (3) a February 9, 2000 Assignment and Assumption Agreement (the "Assignment and Assumption Agreement") between Shri Ohm Corporation ("Shri Ohm"), Shree, and RWI, and (4) a February 9, 2000 Guaranty of the Assignment and Assumption Agreement by Rajen Jhala ("Jhala") ("February 9, 2000 Guaranty").  RWI's claims against Shree, Shri Ohm, Vidyalankar and Jhala were resolved by a default judgment granted to RWI in an order dated May 31, 2005 and an amended order dated July 11, 2005. (Docket Nos. 25 and 27).  Sharad Desai and Paul Femmer, who each appeared and filed an answer, are the two remaining defendants in the case.

This case arises from breaches of the parties' agreements.  Pursuant to the January 12, 1996 License Agreement, which Desai and Femmer personally guaranteed by virtue of a January 12, 1996 Guaranty agreement,  Shree was contractually obligated to operate a guest lodging facility located in Springfield, Illinois in accordance with the terms of the License Agreement until January 11, 2011, and Desai and Femmer were contractually required, as guarantors, to pay or perform all such obligations of Shree.  On February 9, 2000, Shri Ohm assumed the License Agreement pursuant to an Assignment and Assumption Agreement with Shree and RWI, but Desai and Femmer remained contractually obligated to RWI under the January 12, 1996

Guaranty. The Assignment and Assumption Agreement provided, in relevant part, that Shree, and Desai and Femmer as guarantors, "shall remain secondarily liable for payment and performance of the Agreements." (Exhibit 6, Assignment and Assumption Agreement, § 2.)

Defendants breached the License Agreement and January 12, 1996 Guaranty, however, by failing repeated quality assurance inspections and failing to pay monthly license fees owed to RWI ("Recurring Fees"). In further breach of their agreements, rather than curing their quality and monetary defaults, Defendants unilaterally terminated the License Agreement effective October 1, 2002, by ceasing to operate the Facility as a Ramada® guest lodging facility and by losing possession of the Facility to their lender.

In Count Five of its Complaint and this Motion, RWI seeks liquidated damages and all Recurring Fees due and owing from the two remaining defendants, Desai and Femmer, pursuant to the terms of the License Agreement and January 12, 1996 Guaranty, resulting from their failure to make payments as required by the January 12, 1996 Guaranty. Specifically, the Guaranty provides that "[u]pon default by Licensee and notice from [RWI] we will immediately make each payment and perform or cause Licensee to perform, each unpaid or unperformed obligation of Licensee under the Agreement." (Exhibit 2, January 12, 1996 Guaranty.)

Desai and Femmer do not dispute that the License Agreement and January 12, 1996 Guaranty Agreement are valid and enforceable contracts, nor do they dispute that they have failed to pay Recurring Fees or liquidated damages to RWI pursuant to the terms of those agreements. In fact, Desai and Femmer have admitted all material facts entitling RWI to the judgment it seeks. Accordingly, RWI respectfully requests that the Court grant its Motion and enter summary judgment in favor of Plaintiff and against defendants Desai and Femmer on Count Five of the Complaint.

2

B.      **RELEVANT UNDISPUTED FACTS**

**Parties, Jurisdiction and Venue**

1.      Plaintiff RWI is a corporation organized and existing the under the laws of the State of Delaware, with its principal place of business in New Jersey.  (Exhibit 4, Affidavit of Kathy Cox ("Cox Aff.") ¶ 4.)

2.      Defaulted defendant Shri Ohm Corporation d/b/a Shree Ohm, Inc. ("Shri Ohm"), is an Illinois corporation which was involuntarily dissolved on April 1, 2002.  Shri Ohm Corporation was doing business as Shree Ohm, Inc. at the time the License Agreement was signed on January 12, 1996.  Prior to its dissolution, Shri Ohm maintained its principal place of business and its Registered Agent at 625 E. St. Joseph Street, Springfield, Illinois 62701.  (Ex. 4, Cox Aff. ¶ 5.)

3.      Defaulted defendant Vidyalankar is an individual and a citizen of the state of Florida, residing at 4139 E. Busch Boulevard, Unit #400, Tampa, Florida 33617.  Vidyalankar was a 25% shareholder in Shri Ohm at the time the License Agreement was signed on January 12, 1996.  (Ex. 4, Cox Aff. ¶ 6; Exhibit 12, 1996 Tax Return and S corporation election of Shri Ohm.)

4.      Defaulted defendant Jhala is an individual and a citizen of the State of Missouri, residing at 16347 Champion Dr., Chesterfield, Missouri 63005.  Jhala is the Registered Agent for Shri Ohm, and was a 25% shareholder in Shri Ohm at the time the License Agreement was signed on January 12, 1996.  (Ex. 4, Cox Aff. ¶ 7; Exhibit 12, 1996 Tax Return and S corporation election of Shri Ohm.)

5.      Remaining defendant Desai is an individual and a citizen of the state of Illinois, residing at 8 Dunbridge Ct., Glen Carbon, Illinois 62304.  (Ex. 4, Cox Aff. ¶ 8; Parties' Proposed

Scheduling Order at 1 (Docket No. 20).)  Desai was a 25% shareholder in Shri Ohm at the time the License Agreement was signed on January 12, 1996.  (Ex. 4, Cox Aff. ¶ 8; Exhibit 12, 1996 Tax Return and S corporation election of Shri Ohm.)

6.    Remaining defendant Femmer is an individual and a citizen of the state of Missouri, residing at 1616 Wildhorse Pkwy, Chesterfield, Missouri 63005.  (Ex. 4, Cox Aff. ¶ 9; Parties' Proposed Scheduling Order at 1 (Docket No. 20).)  Femmer was a 25% shareholder in Shri Ohm at the time the License Agreement was signed on January 12, 1996.  (Ex. 4, Cox Aff. ¶ 9; Exhibit 12, 1996 Tax Return and S corporation election of Shri Ohm.)

7.    The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.00.  (Ex. 4, Cox Aff. ¶ 10.)

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367.

9.    This Court has personal jurisdiction over Desai and Femmer by virtue of, among other things, section 2 of the Addendum to the January 12, 1996 License Agreement, described in more detail below and guaranteed by Desai and Femmer, pursuant to which Section 17.4 of the License Agreement was amended by providing "that all litigation by or between [Defendants] and [RWI], arising directly or indirectly from the franchise relationship, shall be commenced and maintained . . . in the state courts of Illinois or the United States District Court for Illinois . . . ."  (Ex. 1, License Agreement; Ex. 2, January 12, 1996 Guaranty.)

10.    Venue is proper in this forum pursuant to 28 U.S.C. § 1391(b) because the activities complained of occurred in this judicial district.  (Ex. 4, Cox Aff. ¶ 11.)

**The Agreements Between The Parties**

11.    On or about January 12, 1996, RWI entered into a License Agreement with Shree for the operation of a 120-room guest lodging facility located at 625 E. St. Joseph Street, Springfield, Illinois 62701, Site No. 7963 (the "Facility") for a 15-year term.  A true copy of the License Agreement is attached to RWI's Complaint as Exhibit A and is attached hereto as Exhibit 1.  (Ex. 1, License Agreement; Ex. 4, Cox Aff. ¶ 20; Ex. 4, Requests for Admission Directed to Desai, deemed admitted[1] (hereinafter "Desai R. A.") ¶¶ 1-6; Ex. 5, Requests for Admission Directed to Femmer, deemed admitted (hereinafter "Femmer R.A.") ¶¶ 1-6.)

12.    Effective as of the date of the License Agreement, Desai, Femmer and Vidyalankar provided RWI with a guaranty of Shree's obligations under the License Agreement, by virtue of the January 12, 1996 Guaranty agreement.  A true copy of the January 12, 1996 Guaranty is attached to RWI's Complaint as Exhibit B and is attached hereto as Exhibit 2.  (Ex. 2, January 12, 1996 Guaranty; Ex. 4, Cox Aff. ¶ 21; Ex. 5, Desai R. A. ¶¶ 12-16; Ex. 6, Femmer R. A. ¶¶ 12-16.)

13.    The License Agreement and the January 12, 1996 Guaranty are valid and binding contracts between the parties.  (Ex. 5, Desai R.A. ¶¶ 1-3, 12-16; Ex. 6, Femmer R.A. ¶¶ 1-3, 12-16.)

14.    Pursuant to the terms of the January 12, 1996 Guaranty, Desai and Femmer "guarant[eed] that Licensee's obligations under the Agreement, including any amendments, will be punctually paid and performed," and further agreed, among other things, and that upon a default under the License Agreement, they would "immediately make each payment and perform

---

[1] On March 1, 2005, RWI timely served on Desai and Femmer Requests for Admission Directed to Desai and Requests for Admission Directed to Femmer.  Neither defendant ever served any response to the Requests for Admission.  Accordingly, pursuant to Federal Rule of Civil Procedure 36, the Requests for Admission are admitted.  Fed. R. Civ. P. 36.

5

or cause Licensee to perform, each unpaid or unperformed obligation of Licensee under the [License] Agreement." (Ex. 2, January 12, 1996 Guaranty; Ex. 4, Cox Aff. ¶ 22.)

15.    Pursuant to the terms of the January 12, 1996 Guaranty, which expressly acknowledges that section 17 of the License Agreement applies to the January 12, 1996 Guaranty, Desai and Femmer further agreed to pay the costs, including reasonable attorneys' fees, incurred by RWI in enforcing its rights or remedies under the Guaranty or the License Agreement. (Ex. 2, January 12, 1996 Guaranty; Ex. 4, Cox Aff. ¶ 23.)

16.    On or about February 9, 2000, Shri Ohm, a corporation in which Desai and Femmer each were 25% owners, entered into an Assignment and Assumption Agreement with Shree and RWI, whereby the License Agreement was assigned from Shree to Shri Ohm, as Licensee. A true copy of the Assignment and Assumption Agreement is attached to RWI's Complaint as Exhibit A and is attached hereto as Exhibit 3. (Ex. 3, Assignment and Assumption Agreement; Ex. 4, Cox Aff. ¶ 8-9, 24; Ex. 5, Desai R. A., ¶¶ 4-6; Ex. 6, Femmer R. A., ¶¶ 4-6; Ex. 11.)

17.    Pursuant to section 2 of the Assignment and Assumption Agreement, Shree agreed that it "shall remain secondarily liable for payment and performance of the Agreements." (Ex. 3, Assignment and Assumption Agreement, § 2; Ex. 4, Cox Aff. ¶ 25; Ex. 5, Desai R. A., ¶ 7; Ex. 6, Femmer R. A., ¶ 7.) The January 12, 1996 Guaranty, pursuant to which Desai and Femmer guaranteed Shree's obligations under the License Agreement, remained in full force and effect and was not modified. (Ex. 2, January 12, 1996 Guaranty; Ex. 4, Cox Aff. ¶ 25.)

18.    Pursuant to section 5 of the License Agreement and section 8 of the Assignment and Assumption Agreement, the Licensee was obligated to operate the Facility as a Ramada guest lodging facility for the remainder of the 15-year term, until January 11, 2011, during which

time the Licensee was permitted to use the Ramada trade names and service marks ("Ramada Marks") in association with the operation and use of the Facility as part of RWI's franchise system.  (Ex. 1, License Agreement, § 5; Ex. 3, Assignment and Assumption Agreement, § 8; Ex. 4, Cox Aff. ¶ 26.)

19.    Pursuant to section 3.4 of the License Agreement, the Licensee was required to operate the Facility in compliance with RWI's "System Standards," as defined in the License Agreement, including RWI's quality assurance requirements.  (Ex. 1, License Agreement, § 3.4; Ex. 4, Cox Aff. ¶ 27; Ex. 5, Desai R. A., ¶ 8; Ex. 6, Femmer R. A., ¶ 8.)

20.    Pursuant to section 4.8 of the License Agreement, RWI had the "unlimited right to conduct unannounced quality assurance inspections" of the Facility (and the unlimited right to reinspect if the Facility received a failing score in the inspection) to determine whether the Facility was in compliance with RWI's quality assurance requirements.  (Ex. 1, License Agreement, § 4.8; Ex. 4, Cox Aff. ¶ 28; Ex. 5, Desai R. A., ¶ 9; Ex. 6, Femmer R. A., ¶ 9.)

21.    Pursuant to section 7 and Schedule C of the License Agreement, the Licensee was required to make certain periodic payments to RWI for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees").  (Ex. 1, License Agreement, § 7 and Schedule C; Ex. 4, Cox Aff. ¶ 29.)

22.    Section 7.3 also provided for interest on all unpaid past due amounts: "Interest" is payable when [Licensee] received[s] [RWI's] invoice on any past due amount payable to [RWI] under this Agreement at the rate of the lesser of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."  (Ex. 1, License Agreement, § 7.3; Ex. 4, Cox Aff. ¶ 30.)

23.     Pursuant to section 3.9 of the License Agreement, the Licensee was required to prepare and submit monthly reports to RWI disclosing, among other things, the amount of gross room revenue earned at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to RWI.  (Ex. 1, License Agreement, § 3.9; Ex. 4, Cox Aff. ¶ 31; Ex. 5, Desai R. A., ¶ 10; Ex. 6, Femmer R. A., ¶ 10.)

24.     Pursuant to section 3.9 of the License Agreement, the Licensee agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.8 and 4.8 of the License Agreement, agreed to allow RWI to examine, audit, and make copies of the entries in these books, records, and accounts.  (Ex. 1, License Agreement, §§ 3.8, 3.9 & 4.8; Ex. 4, Cox Aff. ¶ 32; Ex. 5, Desai R. A., ¶ 11; Ex. 6, Femmer R. A., ¶ 11.)

25.     Pursuant to section 11.2 of the License Agreement, RWI could terminate the License Agreement, with notice to the Licensee, for various reasons, including the Licensee's (a) discontinuing operation of the Facility as a Ramada, (b) loss of possession or the right to possession of the Facility, (c) failure to pay debts as they became due in the ordinary course of business, (d) failure to pay any amount due RWI under the License Agreement, (e) failure to remedy any other default of its obligations or warranties under the License Agreement within 30 days after receipt of written notice from RWI specifying one or more defaults under the License Agreement, and/or (f) receipt of two or more notices of default under the License Agreement in any one year period, whether or not the defaults were cured.  (Ex. 1, License Agreement, § 11.2; Ex. 4, Cox Aff. ¶ 33.)

26.     The parties expressly agreed in the License Agreement that the Licensee would pay RWI liquidated damages for a premature termination of the Agreement.  In section 12.1 of

8

the License Agreement, the Licensee agreed, in the event of a premature termination of the License Agreement pursuant to section 11.2, to pay RWI "within 30 days following the date of termination, as Liquidated Damages," in an amount to be calculated in accordance with a formula specified in the License Agreement.  (Ex. 1, License Agreement, § 12.1; Ex. 4, Cox Aff. ¶ 34.)

27.    These Liquidated Damages were set under section 12 "because actual damages will be difficult or impossible to ascertain on the Effective Date and the amount is a reasonable pre-estimate of the damages that will be incurred and is not a penalty."  (Ex. 1, License Agreement, Appendix A, Definitions, p. 24; Ex. 4, Cox Aff. ¶ 35.)

28.    The formula for calculating liquidated damages is set forth in section 12.1 of the License Agreement.  (Ex. 1, License Agreement, § 12.1.)  The formula set forth in section 12.2 was intended to represent the parties' best estimate of the damages that would result from a premature termination of the License Agreement under the circumstances described in sections 11.1 and 11.2 of the License Agreement.  (Ex. 1, License Agreement, Appendix A, Definitions, p.24; Ex. 4, Cox Aff. ¶ 36.)

29.    The Court previously has interpreted sections 12.1 and 18.4 of the License Agreement as providing for liquidated damages as the lesser of the section 12.1 formula or $1,000.00 multiplied by the number of guest rooms in the Facility (120).  (Docket No. 25.)

30.    Pursuant to section 17.4 of the License Agreement, Shri Ohm agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement."  (Ex. 4, Cox Aff. ¶ 37.)

31.     Section 17.5 of the License Agreement provided, among other things, that it will be governed by New Jersey Law.  (Ex. 1, License Agreement, § 17.5; Ex. 4, Cox Aff. ¶ 38.)

**The Defaults and Termination**

32.     Beginning in 2000, the Licensee repeatedly failed to operate the Facility in accordance with RWI's System Standards, in breach of its obligations under the License Agreement.  (Ex. 4, Cox Aff. ¶ 39.)

33.     The Facility failed four quality assurance ("QA") inspections conducted by RWI from September 2000 through July 2002.  RWI provided written notice to the Licensee of its QA defaults under the License Agreement by letters dated October 5, 2000, August 20, 2001, December 3, 2001, and August 27, 2002, respectively, and further advised it that the License Agreement was subject to termination.  True copies of these written notices are attached to RWI's Complaint as Group Exhibit D and are attached hereto as Group Exhibit 7.  (Ex. 4, Cox Aff. ¶ 40; Group Ex. 7.)  Desai and Femmer, as guarantors, received copies of August 20, 2001 letter from RWI.  (Ex. 5, Desai R. A., ¶¶ 17-20; Ex. 6, Femmer R. A., ¶¶ 17-20; Group Ex. 7.)

34.     Between January 2000 and September 2002, RWI also received numerous complaints from customers concerning the inferior quality of the Facility, including complaints of dirty guest rooms and bathrooms (such as urine around the toilet and food crumbs in rooms; dirty bathtubs and toilets and mold in shower; dirty underwear, dirty sheets and a stained comforter left in a guest room bed; moldy/musty/smelly guest rooms and bathrooms; wet carpets; bugs in guest rooms; rodent and insect traps left in guest rooms; three mice in a guestroom and two mice in a kitchen; rude staff; broken locks, air conditioner, ice machine and faucets; and dirty floors and carpet coated with hair and dust).  A true copy of the customer complaint records is attached hereto as Group Exhibit 8.  (Ex. 4, Cox Aff. ¶ 41; Group Ex. 8.)

10

35.     In addition to their QA defaults, Defendants failed to comply with their monetary obligations under the License Agreement.  By letter dated April 5, 2001, RWI advised the Licensee that (a) it was in breach of the License Agreement because it had not filed its monthly revenue reporting forms for October-December 2000, and January-February 2001 and owed RWI approximately $52,113.15 in outstanding Recurring Fees at that time, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the License Agreement might be subject to termination.  A true copy of the April 5, 2001 letter is attached to RWI's Complaint as Exhibit E and is attached hereto as Exhibit 9 (Ex. 4, Cox Aff. ¶ 42; Ex. 9.)

36.     Rather than cure their long-standing QA and monetary defaults, Defendants further breached the License Agreement.  Specifically, they unilaterally terminated the License Agreement by ceasing to operate the Facility as a Ramada guest lodging facility and by losing possession of the Facility to their lender.  (Ex. 4, Cox Aff. ¶ 43; Ex. 5, Desai R. A., ¶¶ 21-24; Ex. 6, Femmer R. A., ¶¶ 21-24.)

37.     On or about August 14, 2002, RWI learned that Defendants had failed to pay the Facility's electric bill and ceased operation when the electricity was shut off by the electric company, City Water, Light and Power.  Shortly thereafter, RWI learned that Defendants had unilaterally terminated the License Agreement by ceasing to operate the Facility as a Ramada and losing possession of the Facility to their lender.  (Ex. 4, Cox Aff. ¶ 44.)

38.     By letter dated October 16, 2002, RWI acknowledged the termination of the License Agreement, effective October 1, 2002, and advised the Licensee that (a) it was to discontinue the use of all signage and other items bearing the Ramada Marks, perform all post-termination obligations, change all signs, billboards, and listings in telephone directories, travel guides, hotel indexes and similar materials in which the Facility is identified as a Ramada, and

11

remove the marks from any advertising or promotional activities, and (b) it was required to pay to RWI as liquidated damages for premature termination the sum of $120,000.00 as required under section 18.4 the License Agreement; all outstanding Recurring Fees, at that time estimated to be $100,878.98; and all additional monies to which RWI is entitled under the parties' agreements.  A true copy of the October 16, 2002 letter is attached to RWI's Complaint as Exhibit F and is attached hereto as Exhibit 10.  (Ex. 4, Cox Aff. ¶ 45; Ex. 5, Desai R. A., ¶ 25; Ex. 6, Femmer R. A., ¶ 25; Ex. 10.)

39.     By letter dated October 27, 2004, RWI further notified Desai and Femmer, in their capacities as guarantors of the License Agreement and Assignment and Assumption Agreement, that they were personally responsible for the payment of "the outstanding royalties and fees, and liquidated damages owed under the License Agreement."  A true and correct copy of the October 27, 2004 letter is attached hereto Exhibit 11.  (Ex. 4, Cox Aff. ¶ 46; Ex. 11.)

40.     Despite their obligation to do so, Desai and Femmer have not fulfilled their contractual obligations.  (Ex. 4, Cox Aff. ¶ 47.)

**Damages**

**Recurring Fees**

41.     As of November 8, 2005, the amount of Recurring Fees due from Defendants Desai and Femmer is $140,901.82, including interest on past due amounts calculated at the legal rate of 1.5% per month.  (Ex. 4, Cox Aff. ¶¶ 48-53, and Exs. A-B thereto.)

42.     Pursuant to section 7.3 of the License Agreement, interest is calculated at the rate of 1.5% monthly, per days in the month, on items that are over thirty days past due.  Interest is not calculated on finance charges or accruals.  (Ex. 4, Cox Aff. ¶ 54.)

43. To date, Desai and Femmer have failed to pay RWI any of the Recurring Fees that were due at the date of termination. (Ex. 4, Cox Aff. ¶ 55.)

44. RWI is entitled to an award of damages of Recurring Fees, with interest, in the current amount of $140,901.82 from Desai and Femmer. (Ex. 1, License Agreement; Ex. 2, January 12, 1996 Guaranty; Ex. 4, Cox Aff. ¶ 56 and Ex. A thereto.)

**Liquidated Damages**

45. Additionally, pursuant to sections 12.1 and 18.4 of the License Agreement and the January 12, 1996 Guaranty, the premature termination of the License Agreement more than eight years before its term was to expire obligates Desai and Femmer to pay Liquidated Damages to RWI. (Ex. 1, License Agreement, §§ 12.1 & 18.4; Ex. 2, January 12, 1996 Guaranty; Ex. 3, Assignment and Assumption Agreement, § 2; Ex. 4, Cox Aff. ¶ 57.) Pursuant to Section 7.3, RWI is also entitled to interest on this amount calculated at the legal rate of interest of 1.5% per month in the amount of $45,193.14 from November 1, 2002 (30 days after the date of termination) through November 11, 2005 (the date of filing of this Motion for Summary Judgment). (Ex. 1, License Agreement, § 7.3; Ex. 2, January 12, 1996 Guaranty; Ex. 3, Assignment and Assumption Agreement, § 2; Ex. 4, Cox Aff. ¶ 57.)

46. Desai and Femmer have not paid any of the Liquidated Damages for premature termination of the License Agreement set forth in the preceding paragraph. (Ex. 4, Cox Aff. ¶ 58.)

47. The purpose of the Liquidated Damages clause is to compensate RWI for the damages it suffers if a license agreement terminates before expiration. Defendants acknowledged in the License Agreement that the Liquidated Damages clause is not a penalty. Instead, the formula set forth in Sections 12.1 and 18.4 represented a good faith pre-estimate of

the monetary loss that RWI would sustain when a licensee causes the premature termination of a license agreement, based on historical system experience. The actual damages which the clause seeks to forecast are in the nature of lost monthly royalties and other payments (Recurring Fees) that RWI would otherwise have received but for the termination. (Ex. 4, Cox Aff. ¶ 59.)

48.     The parties recognized that a premature termination of the License Agreement would deprive RWI of all future royalties and related fees that it otherwise would have received until the year 2011. The purpose of including Liquidated Damages in the License Agreement is to compensate RWI for the damages it suffers as a result of the breach of a License Agreement. (Ex. 4, Cox Aff. ¶ 60.)

49.     It is difficult, if not impossible, to calculate precisely the actual damages suffered by RWI by a premature termination, because royalties are based on a percentage of room revenue. There is no way precisely to calculate what the Facility's room revenue would have been between the termination date of October 1, 2002 and the expiration date of the License Agreement on January 11, 2011. (Ex. 4, Cox Aff. ¶ 61.)

50.     Liquidated Damages clauses are a feature of almost every license agreement used by RWI. There are a number of considerations involved in the formula, which RWI established, through the Liquidated Damages clause, to forecast the extent of its monetary loss in the event of a premature termination of a license agreement with a franchisee. (Ex. 4, Cox Aff. ¶ 62.)

51.     It is difficult for a guest lodging facility franchise company such as RWI to replace a lost franchise in a given market. Doing so can take a considerable amount of time, which represents the basis for that portion of the liquidated damages formula based on an amount equivalent to the Recurring Fees RWI would have received for more than eight years had the franchise agreement remained in place through January 11, 2011. (Ex. 4, Cox Aff. ¶ 63.)

52.     Even with the assumption that a franchise can be replaced, however, it is RWI's experience that the replacement franchise may not be as large as the terminated franchise.  Also, as a new business enterprise, the replacement franchise typically generates less revenue, at least initially, than the terminated franchise generated, and it can take additional months of operation, on average, for the replacement franchise to generate an equivalent revenue stream.  (Ex. 4, Cox Aff. ¶ 64.)

53.     An additional reason for liquidated damages clauses is that the fees paid to RWI in the 24 months prior to termination, particularly where the Facility is operating in a degraded condition, are not the fees that RWI normally would earn if the Facility was in compliance with the License Agreement and RWI's quality standards.  (Ex. 4, Cox Aff. ¶ 65.)

54.     Since the premature termination in October 1, 2002, RWI has been unable to replace this site by licensing another facility to use the Ramada Marks in Springfield, Illinois. (Ex. 4, Cox Aff. ¶ 66.)

55.     The Court previously has interpreted Sections 12.1 and 18.4 of the License Agreement as providing for liquidated damages as the lesser of the Section 12.1 formula or $1,000 multiplied by the number of guest rooms in the Facility (120).  (Docket No. 25.)  The amount of Royalties and RINA Fees that accrued during the 24 full calendar months immediately preceding termination of the License Agreement total $83,691.00.  (Ex. 4, Cox Aff. ¶¶ 67-73 & Exs. A & C thereto.)

56.     In view of the Court's ruling with respect to the reading of Sections 12.1 and 18.4 of the License Agreement, and in light of the calculations set forth above, RWI is entitled to an award of liquidated damages from Desai and Femmer in the amount of $83,691.00, plus interest

in the amount of $45,193.14 pursuant to Section 7.3 of the License Agreement. (Ex. 4, Cox Aff. ¶¶ 67-73.)

**Interest, Attorneys' Fees and Costs**

57.     In addition to the amounts described above, RWI is entitled to interest accruing after the date of entry of RWI's Motion for Summary Judgment until the judgment is paid in full. (Ex. 4, Cox Aff. ¶ 76.)

58.     Pursuant to section 17.4 of the License Agreement, section 2 of the Assignment and Assumption Agreement and the January 12, 1996 Guaranty Agreement, RWI is also entitled to an award of its costs, expenses and attorneys' fees incurred to enforce the License Agreement. (Ex. 1, License Agreement § 17.4; Ex. 2, January 12, 1996 Guaranty; Ex. 3, Assignment and Assumption Agreement, § 2; Ex. 4, Cox Aff. ¶ 76.)

**C.     APPLICABLE LAW**

The Federal Rules authorize a grant of summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper when, even with all inferences drawn in the light most favorable to the non-moving party, Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989), the record demonstrates that no genuine issue of material fact exists and that no reasonable jury could return a verdict in favor of the non-moving party. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

Federal Rule of Civil Procedure 36 provides that a party must answer each matter for which a request for admission is requested within 30 days or the matter is deemed admitted.

Fed. R. Civ. P. 36.  Moreover, "[a]dmissions made under Rule 36, even default admissions, can serve as the factual predicate for summary judgment."  U.S. v. Kasuboski, 834 F.2d 1345, 1350 (7th Cir. 1987).

    **1.**    **Desai and Femmer are Liable to RWI for their Breaches of the Agreements Between the Parties**

To succeed on its claims for breach of contract under New Jersey law,[2] RWI must demonstrate the existence of a valid and binding agreement with Desai and Femmer, that Desai and Femmer breached the terms of the agreement, and that RWI sustained damages as a result of that breach.  See, e.g., Coyle v. Englander's, 199 N.J. Super. 212, 222 (App. Div. 1985) (New Jersey law); Butscher v. Gubbins, No. 93 C 4794, 1994 WL 684954 (N.D. Ill. Dec. 6, 1994) (Illinois law).

    **a.**    **Desai and Femmer are Liable to RWI for Unpaid Recurring Fees**

Femmer and Desai's multiple defaults under the January 12, 1996 Guaranty include their failure timely to pay Recurring Fees due to RWI under the License Agreement and their failure to cause the licensee to maintain the Facility in accordance with RWI's minimum QA standards. See supra Section B at ¶¶ 32-35.  Even if these earlier breaches had not taken place, however, Desai and Femmer are responsible, pursuant to the January 12, 1996 Guaranty, for the undisputed breach that occurred when the Facility ceased operating as a Ramada guest lodging facility and lost possession of the Facility to its Lender.  Section B at ¶¶ 36-38.

Pursuant to Section 11.2 of the License Agreement, RWI was entitled to terminate the Agreements due to those breaches, and, pursuant to Sections 7 and Schedule C of the License Agreement and the January 12, 1996 Guaranty, is entitled to an award of all outstanding

---

[2] Although the License Agreement provides that New Jersey law shall govern, see supra Section B ¶ 31, the result here would be the same regardless of whether New Jersey or Illinois law applies.

Recurring Fee damages owed upon termination, with accrued interest. Under the Assignment and Assumption Agreement, Desai and Femmer as guarantors of Shree's obligations remained secondarily liable for Shri Ohm's payment and performance under the License Agreement. Section B at ¶¶ 14-17.

Under New Jersey law, a guarantor remains liable for performance of the contract after assignment of the contract where there is no material change in the underlying contract and no increase in the guarantor's risk. Anstalt v. FIA Ins. Co., 749 F.2d 175 (3d Cir. 1984) (applying New Jersey law; surety liable where no material change in underlying contract which was modified to substitute purchaser but otherwise remained substantially the same and did not increase the guarantor's risk); Margolius v. Fleming, 6 N.J. Misc. 1033, 143 A. 719 (1928) (guarantor of lease was liable for rent on assignee's default; assignment of lease did not, in absence of affirmative evidence of surrender, relieve guarantor from obligations in lease).

Under Illinois law, a "guarantor is not discharged [upon assignment of a contract] unless the essentials of the original contract have been changed and the performance required of the principal is materially different from that first contemplated." Grundstad v. Ritt, 166 F.3d 867, 870 (7th Cir. 1998) (guarantor remained liable under guaranty following dissolution of assignor from whom judgment creditor obtained rights to payments). Where there is no material change or increase in the risk undertaken by the guarantor, the obligation of the guarantor is not discharged. Essex Int'l, Inc. v. Clamage, 440 F.2d 547, 550-51 (7th Cir. 1971) (guarantor remained liable to successor in interest of creditor). "[T]he guarantor is not discharged unless the essentials of the original contract have been changed and the performance required of the principal is materially different from that first contemplated. An obvious example is presented

18

where the only variation from the terms of the guaranty contract is a change in the name of the debtor corporation." <u>Id.</u> at 550 (internal citations and quotations omitted).

In view of this authority, and as discussed more fully in Section D, infra, Desai and Femmer remain liable to RWI under the January 12, 1996 Guaranty. Accordingly, summary judgment is proper in RWI's favor on Count Five for unpaid Recurring Fees, interest and attorneys' fees and costs.

<b>b.    RWI is also Entitled to an Award of Liquidated Damages</b>

Desai and Femmer are additionally liable to RWI for liquidated damages pursuant to Sections 12.1 and 18.4 of the License Agreement and the January 12, 1996 Guaranty as a result of the premature termination of the License Agreement. Applicable New Jersey law looks with favor upon provisions in agreements that fix specified amounts of damages in the event of a breach. <u>D.H.M. Indus., Inc. v. Central Port Warehouses, Inc.</u>, 127 N.J. Super. 499 (App. Div. 1973), <u>aff'd</u>, 64 N.J. 548 (1974); <u>see also</u> <u>Pav-Saver Corp. v. Vasso Corp.</u>, 143 Ill. App. 3d 1013, 1019, 493 N.E.2d 423, 427 (3d Dist. 1986) (Illinois law accords considerable deference to the parties' agreement where losses are difficult to project). A liquidated damages clause is valid where it "constitutes a reasonable forecast of the provable injury resulting from the breach," and where harm "is incapable or very difficult of accurate estimate." <u>Wasserman's, Inc. v. Middletown</u>, 137 N.J. 238, 249 (1994) (applying New Jersey law); <u>see also</u> <u>Yockey v. Horn</u>, 880 F.2d 945, 952 (7th Cir. 1989) (applying Illinois law) (a liquidated damages provision is enforceable if the sum agreed upon is a reasonable estimate of actual damages likely to be suffered as a result of a breach, and actual damages are difficult to forecast); <u>Tomei v. Tomei</u>, 235 Ill. App. 3d 166, 172, 602 N.E.2d 23, 27 (1st Dist. 1992); <u>Siegel v. Levy Org. Dev. Co.</u>, 182 Ill. App. 3d 859, 862, 538 N.E.2d 715, 717 (1st Dist. 1989).

Moreover, New Jersey courts have held that liquidated damages between commercial parties, in contexts similar to this case, are presumptively valid, and the burden is on the party opposing enforcement of the clause to prove otherwise.  Central Steel Drum Co. v. Gold Cooperage, Inc., 200 N.J. Super. 251, 265, cert. denied, 101 N.J. 303 (1985), overruled on other grounds, Kutzin v. Pirnie, 124 N.J. 500 (1991); see also Naporano Assocs., L.P. v. B&P Builders, 309 N.J. Super. 166, 176 (App. Div. 1998) (whether a liquidated damages clause is valid and enforceable is a question of law for the court).  Courts repeatedly have upheld the enforceability of similar liquidated damages clauses and have acknowledged the difficulty in assessing damages lost in the hospitality franchise context.  For example, in Days Inn v. Patel, 88 F. Supp. 2d 928, 934-36 (C.D. Ill. 2000), a liquidated damages clause, which provided for an amount not less than $2,000 times the number of rooms in the hotel, was found reasonable, valid and enforceable under New Jersey law.  The Court noted that because of the franchisee's breach, the plaintiff franchisor had lost twelve years of revenue from royalties and had been unable to replace the hotel.  Id. at 936.

Similarly, in Ramada Franchise Systems v. Motor Inv. Corp., 755 F. Supp. 1570 (S.D. Ga. 1991), the court noted that the harm caused by premature termination of such agreements "is of a kind that is difficult or impossible to estimate accurately," and that liquidated damage provisions are common in franchise agreements.  Id. at 1578.  Given the difficulty of computing exactly the damages lost, the court upheld a liquidated damages clause that required the defendants to pay the greater of $50,000 or the sum of the preceding twenty-four monthly payments, concluding that such a formula was a reasonable forecast of the probable loss from that facility.  Id. at 1579.

D.     **LEGAL DISCUSSION**

Summary judgment should be granted to RWI because "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits . . . show there is no genuine issue as to any material fact and that [RWI] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In this case, even with all inferences drawn in the light most favorable to the Defendants, Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989), the record demonstrates that no genuine issue of material fact exists here, and that no reasonable jury could return a verdict in favor of Defendants.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  Plaintiff respectfully asks this Court to grant judgment as a matter of law against Desai and Femmer on Count Five of its Complaint.

1.     **Defendants are Liable to Plaintiff for Damages Resulting from the Breach of the License Agreement and Guaranty**

RWI should succeed on its claims for breach of contract under New Jersey law because RWI has demonstrated the existence of a valid and binding agreement with Desai and Femmer, that they breached the terms of the agreement, and that RWI sustained damages as a result of that breach. Coyle v. Englander's, 199 N.J. Super. at 222; Butscher v. Gubbins, No. 93 C 4794, 1994 WL 684954.  In light of the undisputed facts set forth above, it is clear that the licensee breached the valid and enforceable License Agreement, that RWI sustained damages, and that Desai and Femmer are liable for those breaches pursuant to their Guaranty.

Desai and Femmer, as guarantors, are liable for Shree's breaches of the License Agreement pursuant to the terms of the January 12, 1996 Guaranty and, under the express terms of the January 12, 1996 Guaranty and the Assignment and Assumption Agreement, Shree remained responsible for performance under the License Agreement even after the assignment to Shri Ohm.  Section B at ¶¶ 12-17.  Furthermore, as the undisputed facts demonstrate, the

performance required of Desai and Femmer under the Guaranty, and their risks, remained materially the same after the Assignment and Assumption Agreement was entered with Desai and Femmer's second company, Shri Ohm.  In fact, at the time that Desai and Femmer provided the January 12, 1996 Guaranty, they already were significant shareholders in Shri Ohm, their corporation to which the License Agreement later was assigned.  Section B at ¶¶ 5-6.  The License Agreement did not change as a result of the assignment; the Agreement merely was transferred from Shree to Shri Ohm (which was the same company:  Shri Ohm doing business as Shree).  Anstalt v. FIA Ins. Co., 749 F.2d 175 (3d Cir. 1984) (New Jersey law).  Accordingly, Desai and Femmer were not relieved of their obligations under the Guaranty.  Margolius v. Fleming, 6 N.J. Misc. 1033, 143 A. 719 (1928) (New Jersey law).

Desai and Femmer remain liable even if Illinois law were applied, for the same reasons: there was no change in the risk undertaken by them as guarantors.  Grundstad v. Ritt, 166 F.3d 867, 870 (7th Cir. 1998); Essex Int'l, Inc. v. Clamage, 440 F.2d 547, 550-51 (7th Cir. 1971).  Accordingly, the breaches of the License Agreement and the failure of Desai and Femmer to perform under the January 12, 1996 Guaranty entitle RWI to an award of the  Recurring Fees due and owing to RWI, as well as to Liquidated Damages pursuant to Sections 12.1 and 18.4 of the License Agreement.

With respect to Liquidated Damages, as set forth Section C, supra, New Jersey and Illinois law looks with favor upon provisions in agreements that fix specified amounts of damages in the event of a breach.  D.H.M., 127 N.J. Super. 499 ; Pav-Saver, 143 Ill. App. 3d 1013, 493 N.E.2d 423.  The Liquidated Damages clause set forth in the License Agreement is valid and enforceable because it is a reasonable forecast of the provable injury resulting from the breach, and the harm was difficult or impossible to ascertain.  Wasserman's, 137 N.J. at 249;

Yockey, 880 F.2d at 952.  Moreover, because the instant case involves a Liquidated Damages provision between commercial parties, the provision is presumptively valid and the burden is on Desai and Femmer to prove otherwise.  Central Steel, 200 N.J. Super. at 265.

The parties to the License Agreement expressly recognized that "actual damages will be difficult or impossible  to ascertain on the Effective Date and the amount is a reasonable pre-estimate of the damages that will be incurred and is not a penalty."  Supra Section B, ¶ 14.  See also Wasserman's, 137 N.J. 238; Yockey, 880 F.2d 945.  RWI has computed its damages under the express terms of the contract, based on the formula to which the parties agreed and in accordance with the Court's previous interpretation of those contractual terms in this case.  (See Docket No. 25.)  That formula is both reasonable and appropriate given that RWI would have continued to receive revenue from the Licensee for an additional 8 years had the Facility not ceased operation, and given that RWI has been unable to replace this facility over the last two years.  Supra Section B, ¶¶ 47-54.  Accordingly, RWI is entitled to judgment against Desai and Femmer on Count Five of its Complaint for both (1) Recurring Fees in the amount of $140,901.82 and (2) Liquidated Damages in the amount of 83,691.00, plus interest in the amount of $45,192.96, attorneys' fees and costs, as well as such further relief as the Court deems just and proper.

## CONCLUSION

**WHEREFORE**, plaintiff Ramada Worldwide Inc., formerly known as Ramada Franchise Systems, Inc., respectfully requests that the Court enter judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, in its favor and against Sharad Desai and Paul Femmer, jointly and severally, awarding $140,901.82 in Recurring Fees and interest, and $83,691.00 in

Liquidated Damages plus interest in the amount of $45,192.96, for a total award of $269,785.78,

plus attorneys' fees and costs, and post-judgment interest.

Dated: November 11, 2005                      RAMADA WORLDWIDE INC., formerly known
                                              as RAMADA FRANCHISE SYSTEMS, INC.


                                              By:___s/ Fiona A. Burke_____
                                                    Counsel for Plaintiff
                                                    Fiona A. Burke Bar Number: 6273779
Paula J. Morency
Robin M. Spencer
Fiona A. Burke
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606-6473
Telephone:  (312) 258-5500
Facsimile:  (312) 258-5600
pmorency@schiffhardin.com
rspencer@schiffhardin.com
fburke@schiffhardin.com

## <u>CERTIFICATE OF SERVICE</u>

   I, Fiona A. Burke, an attorney, hereby certify that on November 11, 2005, I electronically filed the foregoing **Ramada Worldwide Inc. formerly known as Ramada Franchise Systems, Inc.'s Motion for Summary Judgment Against Defendants Shard Desai and Paul Femmer and Memorandum in Support of Motion for Summary Judgment (with exhibits)** with the Clerk of the Court using the CM/ECF system, and I hereby certify that on November 11, 2005, I have mailed by United States Postal Service the documents, including the notice of electronic filing, to the following non CM/ECF participants:

<u>By U.S. Mail:</u>

Sharad Desai
8 Dunbridge Court
Glen Carbon, Illinois  62034-1564

Paul Femmer
1616 Wildhorse Parkway
Chesterfield, Missouri  63005


Dated: November 11, 2005     RAMADA WORLDWIDE INC., formerly known
               as RAMADA FRANCHISE SYSTEMS, INC.



         By:  s/ Fiona A. Burke
             Counsel for Plaintiff
             Fiona A. Burke Bar Number: 6273779
             SCHIFF HARDIN LLP
             6600 Sears Tower
             Chicago, Illinois 60606
             Telephone: (312) 258-5500
             Fax: (312) 258-5700
             E-mail: fburke@schiffhardin.com

CH1\ 4386567.1